I hear the next case on the calendar, QOSAJ v. Barr. Good morning, Your Honors. May it please the Court, Michael Duramundo for the appellants, Angela QOSAJ and Enric QOSAJ. This is an asylum case from Albania. It was tried in November of 2016. The immigration judge found Angela, who is the mother and the actual lead respondent in this case, to be credible. She found her testimony to be plausible and consistent with the asylum application, and she also found that Angela had a subjective fear of returning to Albania. This is a longstanding persecuted family, going back to 1945, over 70 years. Multiple instances of persecution to this family. Her husband is the chairman of the party. He's very, very active. There are multiple threats to him and to Angela. He's arrested and beaten on three occasions. And, in fact, the fourth occasion occurs after she leaves during the elections of June of 2015. He's beaten again by the police and the Socialist Party. The major actor in this case is Paulin Sterkaj, who is a member of the parliament, and he's a very, very powerful individual in this area of Albania. Albania is the size of New Jersey, about 3 million people. It's completely socialist today. The government turned socialist in June of 2013 during the elections. It took place in September of 2013. The recent elections, the entire country is now socialist. She was threatened on several occasions. Personally threatened during one occasion where she was at the restaurant alone, and she was told by the chairman of the Socialist Party, Nicola, the husband, was not president at this time, that they were going to burn the entire restaurant down with the entire family in the restaurant. She was threatened again to Nicola and said that she would be sold, kidnapped and sold into prostitution. This occurs regularly in Albania, and there is real fear in her. So, you're, in how we should resolve this case can be, you know, approached in terms of past persecution. It's also going to be approached in terms of future persecution. Judge Katzman, I really think this... I'm sorry, go ahead. That it's a case of future persecution. Without a doubt, there's no doubt that there's past persecution here. Seventy years of persecution. Her entire family, mother, father, two sisters, three brothers, have been granted asylum. Judge Buxman ignores all that evidence, page 188, certified record 188 to 198. There's a letter from the Association of Political People that is ignored again by Judge Buxman. There's a letter from the chairman of the commune that the family has been persecuted for decades, ignored by the court. This court does not know that there have been other actions that have occurred since she has come to the United States. Olinda, the daughter, had an attempt at kidnapping in December 2016. Again, in June of 2017, she's actually in the United States today. The 2017... What is her status? Does she have asylum? She doesn't have asylum. It's pending. I represent her in that case. A very well-documented case actually made the newspapers there. A passerby actually stopped the second kidnapping. Nicola was actually beaten again in August of 2017, and the restaurant was seized by the Socialist Party. That's pending at the Board of Immigration Appeals, and a motion to reopen I filed seven months ago. It hasn't been adjudicated. I was hoping that it would be adjudicated before we came here today, because if it was granted, I wouldn't be here today. If it was denied, I would have made it part of this record today, so the record is not before you. Future persecution? There's no doubt. Nicola is the only one that's still there. There's been longstanding threats of persecution and actual persecution. She has... She's in the zone of risk. Judge Buxpan talks about it a little bit, and there's a footnote with respect to two people. But you have to have similar characteristics to the other person who's persecuted. She clearly does. She belongs to the Democratic Party since 1994. She owns the restaurant. She owns the house. The Democratic Party met in the restaurant continuously. They denied Pauline Sterkai, the Socialist Party parliament member, the right to have meetings in the restaurant. That started in 2005, and that actually started the persecution to this family. She has similar characteristics. She has a direct threat to her that they'll burn the restaurant down with the entire family, and she has an indirect threat to Nicola that they'll kidnap her and sell her to prostitution. Your adversaries contend, and the BIA says that the threats have not been borne out by actual action. Judge Katzmann, they don't have to be. Look at the case of Pora da Silva, that this case was decided, Pora da Silva v. Gonzalez, 4-20-3-70 in 2005. People came from Belarus, husband and wife. They were Jewish. Anti-Semitic government run by a dictator, Lukashenko. No physical harm. They were threatened over and over again. They weren't allowed to go to that school. They had to change schools. Gennady had to change schools in that case. There were no beatings. There were no arrests. No physical harm whatsoever in Pora da Silva, and this court found that there was well-founded fear of persecution. I find it hard to believe that the judge made the finding of her being credible and plausible, and also that she had a subjective fear, but didn't go to the point that she found a well-founded fear of persecution. A restaurant was shot at. Her home was searched on a contextual basis, so it was harm to her directly, even if the threats weren't carried out, and she was shoved down twice during those incidents, right? Correct, Judge Bianco. Two times. I don't know how much harm you need to be inflicted on that person. Clearly, Nicola's political opinion is imputed to Angela, and she was a Democratic Party member and an activist. There was a religious part of this case that really was not brought forward at the individual hearing before Judge Buxband. They were Catholics, and in fact, one of the raids on the house, they tried to break the statue of the Virgin Mary. That part of the case was never really well-developed. It's really a political case. I would really claim, based on the facts of this case, that there's past persecution, and that there's a very good likelihood of future persecution. Paulin Sterkaj is still there. He's still a member of the Parliament. They call it deputy swapping in Albania. He was a Socialist Party member, and then he switches to the Democratic Party. He gets elected in the Democratic Party Parliament in 2009. Three months later, he resigns, and he goes back to the Socialist Party. Very powerful man. He was in charge of the police force in Albania. He's still there. There is a well-founded fear. Under Cardoza-Fonseca, the Supreme Court case, you only need a 10% chance. It's a likelihood, a possibility of 10% that she will be persecuted. The facts of this case, the history of the family, and all of the family grants of asylum are in there. Her mother, her father, her three brothers, and her two sisters. There's no doubt that she feels that she has an objective basis that she will suffer persecution if she's returned. Housekeeping. Yes, Judge. You do a lot of this. What was the regular wait that you would have to have a determination on the motion to reconsider? Whether there were new facts, and those facts were not discoverable before, and that they go to the heart of the court. You thought you'd have a decision by now. Is this an unusually long wait? I do a lot of this because I can correct a lot of these cases. I get them after they're decided. I've been doing this for 40 years. I usually get those cases within a three to six month period. I think everything has been slowed down under this administration because there's been such an emphasis on immigration. There's been a tremendous amount of arrests. Is it your view that it's not likely that we'd have a decision on the motion to reconsider in the next 30 days? It's my view, yes. I would have expected it within the first three to four months. It's been six and a half months now, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Neha Kamani for the respondent. I'd first like to address some of the arguments that opposing counsel made regarding the motion to reopen that's pending before the BIA. That, as I said, is pending before the BIA, and it's not properly before this Court. Those facts? We know that. Thank you, Your Honor. Could I ask you to help me understand something? In a circumstance where you're in the petitioner's position, your restaurant is shot out twice. Your home is twice invaded by secret police who push you to the ground. Those same police allegedly threaten to sell you into sexual slavery in a foreign country. Every election cycle, your husband gets shot twice. Your son gets beaten, and a local political leader threatens to burn down your restaurant and kill your son. In that circumstance, wouldn't you be afraid of returning? Your Honor, persecution is an extreme concept, as I'm sure you know. And these events, which took place over Spanish— Would you be afraid of returning? As the opposing counsel said, as the immigration judge found, she does have subjective fear of persecution. That is undisputed. And no one's contesting that she is afraid of returning to her home country. Now, whether or not her experiences rose to the level of persecution, the immigration judge and the Board agreed it did not. As I said— What about the case of—sorry to interrupt, but just help me understand. We've got a Second Circuit case, Tamadou v. Gonzalez, that talks about a slight but discernible chance of persecution as being sufficient to render a subjective fear objectively reasonable, correct? And these cases are fact-dependent. Each case is different. And here, the Board and immigration judge found that she did not possess an objectively reasonable fear of persecution, where the record does not indicate a continued interest in Petitioner. But apart from the fact that the police haven't yet acted on the threats against her, is there any other evidence that the Petitioner's fear is unreasonable? The Petitioner, as the record indicates, her husband was. He was arrested on three occasions. She, on the other hand, the threats were conditional. They were not imminent or menacing, as many cases have said that threats need to be in order to rise to the level of persecution. She's the owner of the restaurant, along with her husband. The restaurant was fired at, right? By unknown individuals. I know, but in terms of the objectivity of her fear of whether if she went back she would be targeted, she's a member of the party. The restaurant that is the whole main source of the dispute, she's the co-owner of. She's been directly threatened herself. Her restaurant has been shot at. Her home, she's been knocked down in her home. Her home's been searched. Why isn't that a slight, at a minimum, a slight discernible fear that something could happen to her if she were to go back? Why isn't it, when she's found to be credible as to all those facts, for the immigration judge to say there's no indication that they're inclined to target her on those facts. I don't know how that conclusion could be drawn from those facts that the immigration judge accepted. Right, because as the record indicates, there has been no continued interest in her. Socialist party members have not asked about her whereabouts. They've not inquired about... They had interest in her when she was associated with her husband, and they've had continuing interest in her husband, right? That's in the record. So if they had interest in her at the time when she was with her husband, why wouldn't there be continuing interest in her if she went back? Because persecution has to be individualist. It has to be directed to the applicant, versa. She provides the opportunity to put pressure on her husband. Her presence is what interests them. Why do they care once she's gone? But once she returns, she becomes a pivot for them to once again exercise control. They threatened her to throw her into prostitution, not to get her to coalesce to something, but to get him to coalesce to something. They shot up the restaurant to put the fear of both of them. They pushed her down to intimidate him. I mean, her presence guarantees that they'll be interested in her again, because she's one way that they can put pressure on him. Isn't that — doesn't that make perfect sense? And he could... The fact that she's gone, I mean, it's true that they don't ask about her, because now they've lost that lever. But when she's there, they do these things to her. Yes, and as the record indicates that the threats have been conditional. The harm has not rose to the level of persecution, where, yes, they pushed her down twice. You mean to tell me — let me ask you a question. If you had a friend whose house was shot up, and they were scared to death, do you think that would be reasonable? And as I said — Do you think it would be reasonable? She does have — I would be scared to death. He has a subjective fear of persecution. Have you ever been threatened? Judges occasionally experience these things. It's not a pleasant experience. This woman's place of business was shot up. She was threatened that they would send her into prostitution. And for some administrative law judge to say that that's not — who finds her credible, and then says, well, that doesn't rise to the You know, I've seen a lot of these cases. I've been doing this — we've been doing this for a while, Judge Gaspin. Judge Bianco is new to the game. But these are incredible facts. These are incredible facts. And as the immigration judge and board found, they occurred over a span of eight years. She was not directly harmed. As you said, she was used as leverage in some instances. When they shoot up her place of business, because there's a span of a few years in And the span reflects the election cycle. It seems like every election cycle, right? Right. Yes, Your Honor. But the record has to compel a contrary conclusion. And here, given that persecution is an extreme concept, that being pushed down twice, conditional threats that were not acted out upon, and a search of a form do not rise to that — It's only when she's shot personally, then she gets asylum. Is that it? No. It has to be acted — well, you said not acted upon. So what's the standard? It's got to be acted upon? They've got to try to force her into prostitution in Italy, and then she's good for the claim? This Court's case law has indicated that threats need to be imminent. Do you hear what you're saying? Do you hear personally what you're saying? Go ahead. It is the government's position that here, the persecution did not rise — her harm did not rise to the level of persecution. As for a well-founded fear of persecution, the record also does not compel a conclusion contrary from the board and immigration judges' decisions that it was not objectively reasonable, where the record here does not indicate any continued interest in Petitioner. For those reasons, we ask the Court to deny the petition for review. Thank you. Thank you, Your Honors. I would also just state that she has no protection if she goes back. They've been accosted by the police. The police are controlled by the Socialist Party. The Socialist Party controls the entire country right now. When the Socialists go in, they basically get rid of all the Democratic police. She can't go and get protection. If she has a problem when she returns, she has no one to protect her. There was also no actual — I'm talking about the status of the record that you made, not the record that you — into the future, I believe. Yes, Your Honor. And also, there's been no separate adjudication of the Catt claim. Judge Buxban denied the Catt claim based on the fact that she didn't have a well-founded fear of persecution on the asylum claim, even though she found her credible. She didn't really go through the Catt analysis. Thank you, Your Honors. We'd ask that the case be reversed. How do you respond to the argument that if you look at the State Department country reports, that it suggests that over time things are getting better in Albania? I respond that they are — There is corruption, but not — and there is — there are some isolated incidents of the kind that this case might fall within, but it's not necessarily systemic now to the country. I respond that based on the fact that the reports are a year to a year and a half old by time they get to the court. I always use an expert on country conditions. It was not done in this case. I use Dr. Bernd Fischer all the time. He goes to Albania four times a year, gives up-to-date, you know, conditions as to what's going on. It wasn't done here. I keep up-to-date on — I use an expert on every asylum case. I don't do an asylum case without it. So I always counteract the State Department reports by using an expert on that country, and they're outdated. What's going on right now in Albania is completely different from the reports that are in this record. We've got the record we've got. Okay. Thank you. Thank you for your time, Your Honors. Thank you. Thank you both for your arguments. The Court will reserve decision.